**In the Matter of David E.Z. SIMS and Nancy D. Sims, Debtors.**

**Bankruptcy No. MM13-88-01746.**

United States Bankruptcy Court, W.D. Wisconsin.

June 1, 1989.

Richard B. Jacobson, Borns, Macaulay & Jacobson, Madison, Wis., for debtors.

William A. Chatterton, Ross and Chatterton, Madison, Wis., trustee.

Rodney F. Knight Deputy Corp. Counsel, Madison, Wis., for Dane County, Wisconsin.

ROBERT D. MARTIN, Chief Judge.

On April 21, 1988, David Sims pled no contest to a charge of fleeing an officer brought by the State of Wisconsin. The Dane County Circuit Court imposed a penalty of either a $655.00 fine or twenty-five days in jail, and revoked Mr. Sims' driver's license for one year. Mr. Sims was authorized to pay the amount of the fine in $100.00 monthly installments, commencing May 22, 1988.

On May 17, 1988, Mr. Sims pled no contest to a charge of failing to notify an

owner of property damage brought by the City of Madison. A Dane County Circuit Court imposed a penalty of either a $135.00 forfeiture or one day in jail for each $20.00 unpaid. The Court also ordered that this forfeiture be consolidated with the earlier fine for purposes of payment. The aggregate amount—$790.00—was to be paid under the same terms as the original $655.00 fine.

On July 25, 1988, Mr. Sims and his wife filed a chapter 13 petition and a plan to pay their unsecured creditors, including Dane County, in full. At that time, Mr. Sims owed $590.00 to the Clerk of Court for Dane County. Apparently, Mr. Sims had made the $100.00 payments due on the 22nd of May and June, respectively, but had failed to make the July 22nd payment.

By letter dated July 26, 1988, Mr. Sims' counsel informed the Clerk of Court for Dane County in writing of the imposition of the automatic stay. On August 30, 1988, Mr. Knight, an attorney from the Office of the Corporation Counsel, responded that he "had advised the court clerk to suspend collection of Mr. Sims' forfeiture." The debtors' plan was confirmed on September 2, 1988.

On December 11, 1988, Mr. Sims was arrested by a Dane County sheriff and incarcerated for approximately twenty-eight hours, causing him to miss one day of work. Mr. Sims also allegedly suffered fear, pain, and humiliation.

On January 27, 1989, Mr. Sims filed a motion requesting that the Bankruptcy Court find the Clerk of the Dane County Circuit Court and Dane County in contempt under 11 U.S.C. § 362(h) for violating the automatic stay. After a hearing held on February 13, 1989, the Court took the matter under advisement. The parties completed briefing on February 23, 1989.

The County argues that the incarceration of Mr. Sims was the "continuation of a criminal proceeding" excepted from the au-

tomatic stay under section 362(b)(1). Section 362(b)(1) provides that the filing of a bankruptcy petition "does not operate as a stay ... under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." This provision embodies a basic policy that "[t]he bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension." H.R. No. 95–595 at 342, 95th Cong, 1st Sess. (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6298. More generally, section 362(b)(1) is indicative of the general policy that federal courts should abstain from interfering in state criminal proceedings.[1]

The April 21, 1988 conviction for fleeing an officer was a criminal proceeding. Under Wisconsin law, "[a] crime is conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime." WIS.STAT. § 939.12 (1987–88). Although the proceeding memorandum from the April 21st hearing does not so indicate, Mr. Sims appears to have been charged under WIS.STAT. § 346.04(3) (1987–88), which provides:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by wilful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall he increase the speed of his vehicle or extinguish the lights of his vehicle in an attempt to elude or flee.

The penalty for a violation of this provision is found in WIS.STAT. § 346.17(3)(a) (1987–88), which provides (with exceptions not relevant here):

> [A]ny person violating s. 346.04(3) shall be fined not less than $300 nor more than

---

**1.** *Cf. Kelly v. Robinson,* 479 U.S. 36, 44, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986) ("we must consider the [Code's] language ... in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the

States in unfettered administration of their criminal justice systems"); *Younger v. Harris,* 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971) ("fundamental policy against federal interference with state criminal prosecutions").

$2,000 and may be imprisoned for not more than one year in the county jail. Thus, the initial state court action arose out of the commission of a crime as defined by Wisconsin law. As such it was a criminal proceeding within the meaning of section 362(b)(1).[2]

Conversely, the subsequent action brought by the City of Madison on May 17th was not a criminal proceeding. Apparently Mr. Sims was charged under WIS. STAT. § 346.69 (1987–88), which provides in part:

> The operator of any vehicle involved in an accident resulting only in damage to fixtures or other property ... shall take reasonable steps to locate and notify the owner ... of such fact and of his name and address ... and shall make report of such accident when and as required in s. 346.70.

A violation of this provision subjects the defendant to a forfeiture of not more than $200.00. WIS.STAT. § 346.74(3) (1987–88). Mr. Sims was assessed a forfeiture of $145.00 or one day in jail for each $20.00 remaining unpaid.[3] Because a violation of section 346.69 is punishable only by the imposition of a forfeiture, it is not a crime as that term is defined by state law.[4]

The fact that the May 17th state court action was not a criminal proceeding does not necessarily render the section 362(b)(1) exception inapplicable to the County's postpetition actions. While the fine and the forfeiture were consolidated for payment, the penalty imposed in the April 21st proceeding—$655.00 fine or twenty five days in jail—alone was a sufficient basis for the postpetition incarceration of Mr. Sims.[5]

The question then becomes whether the incarceration of Mr. Sims was the "continuation" of the criminal proceeding within the meaning of section 362(b)(1). The County characterizes its action as the imposition of the "alternative" sentence set forth in the original criminal conviction. Mr. Sims contends that his period of confinement was the equivalent of "the enforcement of a money judgment," which section 362(b)(5) states is specifically not excepted from the automatic stay.

The text of section 362(b)(5), and its companion provision, provides that the bankruptcy petition does not operate as a stay—

> (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
>
> (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

11 U.S.C. §§ 362(b)(4), (5). Mr. Sims' argument that (b)(5) qualifies (b)(1) is unavailing for three reasons.

---

**2.** *See In re Dervaes,* 81 B.R. 127, 129 (Bankr.S.D. Fla.1987) ("A 'criminal' action or proceeding is one brought to enforce criminal law.").

**3.** WIS.STAT. § 800.09(1)(a) provides in part:
> If a municipal court finds a defendant guilty it may render judgment by ordering payment of a forfeiture.... If the judgment is not paid, the court may proceed under par. (a), (b) or (c) or any combination thereof, as follows:
> (a) ... At the time the judgment is rendered, the court shall inform the defendant ... of the date by which payment of the forfeiture ... must be made, and of the possible consequences of failure to make the payment in timely fashion, including imprisonment as provided in s. 800.095.
> *See also id.* § 345.47(1)(a) (if a forfeiture is not paid, the court shall order "[t]hat, subject to s.

800.095(8), the defendant be imprisoned for a time specified by the court until the judgment is paid, but not to exceed 90 days").

**4.** WIS.STAT. § 939.12 (1987–88) ("Conduct punishable only by a forfeiture is not a crime."); *see also County of Racine v. Smith,* 122 Wis.2d 431, 435, 362 N.W.2d 439 (Ct.App.1984) (first conviction under WIS.STAT. § 346.63(1) for operating a motor vehicle while under the influence of alcohol "is a civil conviction because the penalty provided in sec. 346.65(2), Stats., is a forfeiture. Sec. 939.12, Stats.").

**5.** *See also* WIS.STAT. § 973.07 (1987–88) ("If the fine, costs, ... are not paid as required by the sentence, the defendant may be committed to the county jail until the fine, costs, ... are paid or discharged for a period fixed by the court not to exceed 6 months.").

First, the incarceration of a recalcitrant criminal debtor hardly seems to be what Congress had in mind when the language "the enforcement of a judgment, other than a money judgment" was placed in section 362(b)(5). *Cf. Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 275 (3rd Cir.1984) ("The paradigm for [the enforcement of a money judgment] is when, having obtained a judgment for a sum certain, a plaintiff attempts to seize the property of the defendant in order to satisfy that judgment."). Second, and more significantly, the section 362(b)(1) exception from the automatic stay addresses a distinct sphere of actions from those addressed in sections 362(b)(4) and (b)(5). The purpose of these latter two exceptions is indicated by the legislative history to section 362(b)(4):

> [W]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

H.R.Rept. No. 95–595 at 343, 95th Cong, 1st Sess. (1977) U.S.Code Cong. & Admin. News 1978, p. 6299. Sections 362(b)(4) and (5) address *civil* actions, in contradistinction to section 362(b)(1) which addresses *criminal* actions. When the government chooses to seek criminal sanctions for conduct which might give rise to civil liability, it is seeking to vindicate punitive and deterrent interests which differ, if only in degree, from those vindicated in a civil suit.[6] It is the integrity of the criminal justice system which section 362(b)(1) protects.[7]

Finally, Mr. Sims' argument runs counter to a common sense reading of the exceptions. The language of (b)(5) tracks that of (b)(4), while none of the phraseology found in (b)(5) appears in (b)(1). The logical inference is that (b)(5) does not qualify (b)(1).[8] More importantly, section 362(b)(1) creates an exception to *all* of the provisions of section 362(a), whereas section 362(b)(5) applies *only* to section 362(a)(2). It would seem odd that Congress would create a blanket exception in (b)(1), supplement that blanket exception in (b)(5) *only as* to actions coming with 362(a)(2) and then create an exception to that supplementation as to "the enforcement of money judgments." That is too labyrinthian even for the Bankruptcy Code.

Adopting the County's characterization of its action, numerous cases support the proposition that where a convicted defendant is sentenced to a monetary penalty in lieu of a jail term, and then defaults, the incarceration of the defendant is the continuation of the underlying criminal proceeding within the meaning of section 362(b)(1). In *Pellegrino v. Div. of Criminal Justice (In re Pellegrino)*, 42 B.R. 129 (Bankr.D. Conn.1984), the debtor pled guilty to larceny and was given a two-year suspended sentence conditioned on repayment of the

---

**6.** *Cf. United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457, 461 (D.N.C.1984) *aff'd* 796 F.2d 723 (4th Cir.1986) ("A criminal sentence, whether it be imprisonment or fine, is not direct compensation for a pecuniary loss but is punishment for violation of the criminal law."); *Taylor v. Widdowson (In re Taylor)*, 16 B.R. 323, 326 (Bankr.D.Md.1981) *vacated on other grounds* 44 B.R. 548 (D.Md.1984) (criminal prosecution is "instituted primarily to vindicate the public welfare by punishing the criminal conduct of the Debtor and to discourage similar conduct of others").

**7.** *See In re Van Riper*, 25 B.R. 972, 975 (Bankr. W.D.Wis.1982); *see also Titan Enterprises Int'l, Ltd. v. Anoai (In re Anoai)*, 61 B.R. 918, 922 (Bankr.D.Conn.1986) (institution of criminal contempt proceedings for violation of injunction against participating in professional wrestling exhibitions comes within scope of section 362(b)(1)); *Dumas v. Atwood (In re Dumas)*, 19 B.R. 676, 678 (9th Cir.BAP 1982) (imposition of one week jail term and $275.00 fine for disobeyance of subpoena not stayed); *Martin–Trigona v. Gouletas*, 15 B.R. 645, 647 (N.D.Ill.1980) (criminal contempt proceeding excepted from stay under section 362(b)(1)); *cf. In re Dervaes*, 81 B.R. 127, 129 (Bankr.S.D.Fla.1987) (civil contempt proceeding not within scope of section 362(b)(1)).

**8.** *See 134 Baker Street, Inc. v. State of Georgia*, 47 B.R. 379, 381 (N.D.Ga.1984) ("To read § 362(b)(5) and its exclusion of money judgments from stay exemption as encompassing criminal proceedings and penalties would render § 362(b)(1) a nullity in light of §§ 362(b)(4) and (5).").

money stolen. A wage execution was ordered to implement the restitution order. Some time later, the debtor filed a chapter seven. The issue arose whether the state's postpetition enforcement of the wage execution violated the automatic stay. The court held that it did not:

> The literal language of [section 362(b)(1)] together with its legislative history as an expression of congressional policy against bankruptcy court interference with criminal proceedings ... compels the conclusion that neither the restitution nor the wage execution, ordered as a means of carrying it out, were stayed by the filing of the plaintiffs' bankruptcy petition.... To view the wage execution and its enforcement throughout the five-year probationary period as separate from the conviction and sentencing of Pellegrino would distort reality.

*Id.* at 135 (citations omitted).

In *Gilliam v. Metropolitan Gov't of Nashville (In re Gilliam)*, 67 B.R. 83 (Bankr.M.D.Tenn.1986), the debtor pled guilty to driving while intoxicated and was given a suspended sentence and placed on probation. Among the conditions of his probation was the payment of a fine. Two months later, the debtor filed a chapter 13 petition and a plan, which provided for 100% repayment of the fine. When the debtor missed a payment, the state moved to revoke probation and send the debtor to jail. The debtor argued that the automatic stay prevented the revocation of his probation. The court disagreed:

> Prior to discharge, the commencement or continuation of a criminal proceeding is not subject to the automatic stay without regard to its debt collection content.
>
> The district attorney's action to revoke the debtor's probation constitutes the 'continuation of a criminal action or proceeding' and is unaffected by the automatic stay. The fine and court costs were assessed against the debtor by the state criminal court as conditions for avoiding further incarceration. Fixing

and policing the terms of probation are integral parts of the state criminal process.

*Id.* at 87 (citations omitted).

In *Wise v. Ritter (In re Wise)*, 25 B.R. 440 (Bankr.E.D.Va.1982), the debtor had pled guilty to a criminal charge of failing to pay state withholding taxes. He was given a suspended sentence of sixty days in jail on the condition that he pay the amount of the taxes due in monthly installments. The debtor missed his first payment and then filed a chapter 13 petition. The state then revoked his suspended sentence and issued a capias for his arrest. The debtor sought to raise his bankruptcy filing as a shield to imprisonment. The court held without discussion that the automatic stay was no bar to the state's action. *Id.* at 441–42 n. 1. The court then refused to exercise its injunctive powers under section 105 to stay the continuing criminal proceeding:

> Bankruptcy courts should not be used as havens for individuals who seek to escape sentences imposed by other courts. Once a court has determined an individual is guilty and has put that person on terms in lieu of a jail sentence, he should not be permitted to frustrate that prosecution through the filing of a petition in bankruptcy.

*Id.* at 443.

*Pellegrino, Gilliam,* and *Wise* establish the proposition that the enforcement of a jail sentence, imposed previously at sentencing, following the failure of a criminal defendant to comply with the terms of an alternative monetary penalty is the "continuation of a criminal action or proceeding." *See also United States v. Caddell*, 830 F.2d 36, 39 (5th Cir.1987) (section 362(b)(1) excepted both the imposition of a suspended one-year prison term conditioned on payment or restitution, and revocation of probation upon failure to make payments).

The chapter 13 discharge is broader than in chapter 7, and permits the discharge of debts coming within section 523(a)(7).[9] 11

---

**9.** Section 523(a)(7) excepts from discharge "any debt ... to the extent such debt is for a fine,

penalty or forfeiture payable to and for the benefit of a governmental unit, and is not com-

U.S.C. § 1328(a). Without passing on the issue, it may well be that upon the completion of all payments under a chapter 13 plan, the discharge injunction of section 524(a) would be broad enough to stay the collection of a criminal fine. *See Gilliam,* 67 B.R. at 86; *see also In re Johnson–Allen,* 871 F.2d 421, 428 (3rd Cir.1989) (criminal restitution obligation imposed as a penalty for welfare fraud is dischargeable upon completion of payments under chapter 13 plan). Given the "superdischarge" of chapter 13, a holding that the bankruptcy filing stayed the imposition of a jail term for failure to fulfill the conditions of an alternative monetary penalty would, at least in cases of little or no plan payments on general claims, provide the debtor with a a nearly complete shield against the consequences of his criminal conduct.[10] Whether the County was imposing an alternative penalty, as the County contends, or attempting to collect its criminal fine, as Mr. Sims contends, the incarceration of Mr. Sims was the continuation of his arrest and conviction for violating WIS.STAT. § 346.04 (1987–88)—a criminal statute— and is excepted from the automatic stay under section 362(b)(1).

 Mr. Sims makes much of the letter from Mr. Knight, which states that the County would "suspend collection of Mr. Sims' forfeiture." First, Mr. Knight can be faulted for partially misstating the nature of the penalty assessed against Mr. Sims, since both a fine and a forfeiture were imposed. Second, as to the fine, the effect of Mr. Knight's letter was not to "waive" the section 362(b)(1) exception from the automatic stay and thus to render the County liable under section 362(h) when it jailed Mr. Sims. I have found no case dealing with the "waiver" of a section 362(b) exception. Section 362(h), however, provides a remedy for "any willful violation of a stay

*provided by this section."* (emphasis supplied). Since no stay was in effect with regard to the continuation of the criminal proceeding for fleeing an officer, no stay was violated. If Mr. Sims has any remedy against Mr. Knight or Dane County it is other than under the bankruptcy law.

ORDER

The court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that the debtor's motion for contempt is denied.

pensation for actual pecuniary loss." The Supreme Court has stated that "Section 523(a)(7) protects traditional criminal fines; it codifies the judicially created exception to discharge for fines." *Kelly v. Robinson,* 479 U.S. at 51, 107 S.Ct. at 362.

**10.** The potential for asymmetry between the automatic stay and the discharge injunction with regard to criminal fines, penalties and forfeitures reflects "a balancing of 'deference to state criminal proceedings and protection for debtors' right to a discharge and a fresh start.'" *Gilliam,* 67 B.R. at 86 n. 6 (*quoting Brown v. Shriver (In re Brown),* 39 B.R. 820, 827 (Bankr. M.D.Tenn.1984)).