UNITED STATES of America, Plaintiff,

v.

PALM BEACH CRUISES,
S.A., Defendant.

No. 94–8049–CR.

United States District Court,
S.D. Florida.

Feb. 23, 1996.

Order Denying Reevaluation
April 18, 1996.

Charles A. Demonaco, Dept. of Justice, Washington, DC, for Plaintiff.

Benedict P. Kuehne, Miami, FL, for Defendant.

### ORDER DENYING MOTION FOR STAY OF FINANCIAL CONDITIONS

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the Defendant's Motion for a Stay of Financial Conditions, filed December 29, 1996. After a thorough review of the record and pleadings, and for the reasons stated below, the Defendant's motion must be and is DENIED.

## I.

This Court sentenced the Defendant, Palm Beach Cruises, S.A. ("PBCSA") on August 30, 1994, after it pled guilty to environmental crimes in violation of 33 U.S.C. § 1321(b)(3) and (b)(5). The Court placed the Defendant on probation and imposed a $500,000 fine, to be paid at the rate of $100,000 per year during the five year probationary period. The Court also ordered the Grunstad Group (various entities associated with PBCSA) to post with the Clerk of Court a performance bond in the amount of $500,000 to guarantee payment of the fine imposed on PBCSA, and to monitor the environmental compliance program that PBCSA was directed to implement. In an Order dated December 19, 1994, the Court modified its Order of August 30, 1994 by allowing the Grunstad Group and PBCSA to post a performance bond of only $100,000. In June of 1995, the Defendant, having posted $40,000 toward the performance bond, filed a motion to extend the deadline for posting the remaining $60,000 on the bond to December 31, 1995. The Court granted the requested relief on June 30, 1995. On October 30, 1995, PBCSA filed a voluntary Chapter 11 petition for bankruptcy. The bankruptcy proceeding is still pending before the Bankruptcy Court in this District.

On December 29, 1995, PBCSA filed a motion to stay the financial conditions imposed at sentencing until March 31, 1996, in order to allow the Bankruptcy Court to receive and consider the Defendant's plan of reorganization. The United States filed a response in opposition to PBCSA's motion on January 19, 1996, asserting that the Defendant must continue to make monthly payments on the fine and post the additional $60,000 on the performance bond despite the Chapter 11 filing. PBCSA replied to the Government's response on February 8, 1996.

## II.

█ PBCSA first asserts that its obligation to pay the criminal fine is stayed by the language of 11 U.S.C. § 362(a), which provides for an automatic stay on certain proceedings against a debtor. Section 362(b)(1), however, explains that the filing of a voluntary bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." The Eleventh Circuit has not squarely addressed the question of whether a defendant's obligation to pay a fine pursuant to a criminal sentence represents a "continuation" of the proceedings that led to the sentence. Nevertheless, both the Fourth and the Sixth Circuits have endorsed this conclusion.

In *United States v. Troxler Hosiery Co., Inc.*, 796 F.2d 723 (4th Cir.1986), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1566, 94 L.Ed.2d 758 (1987), the court adopted and affirmed the district court's holding that the automatic stay of section 362(a) did not extend to the payment of a criminal contempt fine. The defendant, Troxler, had been convicted of criminal contempt, and fined $80,000 plus costs for removing previously seized hazardous sleep wear and contracting for its sale in a foreign county, and for falsifying company records to conceal its actions. Troxler was given twelve months to pay the fine, but three months later, filed a voluntary bankruptcy petition under Chapter 11. The government filed proof of a secured claim in the amount of the fine and costs, no part of which had been paid. The Government also filed an adversary proceeding complaint with the Bankruptcy Court, seeking a declaratory judgment that the automatic stay did not apply to its attempts to collect the criminal fine. The Bankruptcy Court ruled as a matter of law that the automatic stay applied to the government's efforts to collect the contempt fine. On appeal, however, the district court reversed the bankruptcy judge's order, holding that the automatic stay did not apply to the collection of fines and costs for criminal contempt. *United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457, 462 (M.D.N.C. 1984). Relying on section 362(b)(1), the district court offered the following analysis in support of its conclusion:

> Sentencing of a criminal defendant, whether it be imprisonment or imposition of a fine, fixes and declares the legal consequences of predetermined guilt. A criminal sentence without accompanying authority to ensure service by the defendant as

636

ordered would be meaningless. Action by the government to enforce the terms of a sentence are plainly a continuation of the entire criminal proceeding.

*Id.* at 460 (citation omitted). The district court also rejected Troxler's argument that its unsecured creditors would be harmed if the automatic stay did not apply:

The Court has considered the potentially detrimental effect which relieving the government from the automatic stay could have on the unsecured creditors. Creditors of equal standing should not be treated unequally and creditors should not be indirectly punished for the criminal wrongs of the bankrupt. Nevertheless, when the government is due payment of a criminal fine, it is not on an equal footing with most of a bankrupt's creditors because a criminal fine is not compensation for pecuniary loss. A sovereign's interest in protecting its citizens through the criminal law is fundamentally different from the private financial concerns and for that reason must take precedence.

*Id.* at 462.

The Sixth Circuit endorsed the Fourth Circuit's view in a footnote to its opinion in *United States v. Coluccio,* 19 F.3d 1115 (6th Cir.1994). In *Coluccio,* the Court of Appeals affirmed the district court's grant of a writ of execution against the defendant to secure payment of a criminal fine. The defendant suggested that, although he had not yet filed for bankruptcy, he would be protected by the bankruptcy code's automatic stay provisions. The Sixth Circuit acknowledged that the filing of a bankruptcy petition automatically stays legal proceedings against a debtor to enforce judgments obtained prior to the filing of the bankruptcy petition. *Id.* at 1117 n. 2 (citing 11 U.S.C. § 362(a)(1), (2)). It added, however, that "the protective stay ... is not absolute, and allows enforcement of criminal laws *and penalties incident thereto.*" *Id.* (emphasis added) (citation omitted). Therefore, according to the Court, even if the bankruptcy code applied to the defendant, it would not eliminate his continuing liability for criminal fines. *Id.* A number of district courts have concurred with the reasoning of *Troxler* and *Coluccio. See, e.g., In re Sims,*

101 B.R. 52, 54–55 (Bankr.W.D.Wis.1989); *Gilliam v. Metropolitan Gov't of Nashville,* 67 B.R. 83, 87 (Bankr.M.D.Tenn.1986); *134 Baker Street, Inc. v. State of Georgia,* 47 B.R. 379, 380–82 (N.D.Ga.1984).

The Defendant points out that several bankruptcy courts have reached the opposite conclusion, holding that the automatic stay of section 362(a) does apply to the payment of criminal fines. *See, e.g., In re Woodside,* 161 B.R. 969 (Bankr.S.D.Ill.1994); *In re Landstrom Distributors, Inc.,* 55 B.R. 390 (Bankr. C.D.Cal.1985). For the most part, however, these cases rest on the premise that when the United States seeks to compel payment of a criminal fine, it acts as the equivalent of an ordinary creditor seeking to collect a money judgment. *See* 11 U.S.C. § 362(b)(5) (noting that the automatic stay does not apply to the enforcement of a judgment obtained in an "action or proceeding to enforce the government's police or regulatory power" as long as the judgment is "other than a money judgment"). We disagree. A criminal fine imposed after an adjudication or plea of guilt is ordered for the benefit of the public at large, as a sanction designed to punish for past noncompliance and prevent future noncompliance with the criminal law. In other words, a criminal fine rests on twin purposes of penalizing and deterring wrongdoing, rather than a need to compensate the United States for its interest in a "debt" or other pecuniary loss that the Government incurred as a result of the defendant's conduct. Indeed, PBCSA's proposed reading of section 362(b)(5) would eviscerate section 362(b)(1), because the Government's right to commence or continue criminal proceedings against a bankrupt debtor is of no moment unless the Government also is entitled to enforce the penalties imposed at the culmination of the proceedings. For all of the foregoing reasons, therefore, we are unpersuaded by the bankruptcy court holdings in *Landstrom* and *Woodside,* and instead follow the Fourth and Sixth Circuits by confirming that section 362(b)(1) precludes PBCSA from invoking the automatic stay provisions of section 362(a)(1) to delay payment of the criminal fine imposed on August 30, 1994.

■ As an alternative argument, PBCSA seems to suggest that, even if the automatic stay of section 362(a) is inapplicable, this Court should exercise its inherent authority to postpone the resumption of monthly payments on the fine until the Bankruptcy Court approves PBCSA's reorganization plan. The Defendant offers no support for this argument, which we believe conflicts with the spirit, if not the letter, of section 362(b)(1). Ordering a stay of compliance with unequivocal criminal sanctions after a defendant files a voluntary bankruptcy petition would turn the Bankruptcy Courts into a "haven for criminal offenders." *See Troxler Hosiery*, 41 B.R. at 460 (quoting legislative history of section 362(b)(1)). At all events, we can find no sound basis to stay the obligations imposed on the Defendant by this Court.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendant's motion for stay of financial conditions of sentencing order is DENIED.

### ORDER DENYING MOTION REQUESTING REEVALUATION OF REQUEST FOR STAY OF FINANCIAL CONDITIONS

THIS CAUSE comes before the Court upon the Defendant's Motion Requesting Reevaluation of Request for Stay of Financial Conditions in View of Order of Bankruptcy Court and Request for Hearing, filed March 20, 1996. After a thorough review of the record and pleadings, and for the reasons stated below, the Defendant's motion must be and is DENIED. The Defendant's request for a hearing is DENIED.

### I.

This Court sentenced the Defendant, Palm Beach Cruises, S.A. ("PBCSA") on August 30, 1994, after it pled guilty to environmental crimes in violation of 33 U.S.C. §§ 1321(b)(3) and (b)(5). The Court placed the Defendant on probation and imposed a $500,000 fine, to be paid at the rate of $100,000 per year during the five year probationary period. The Court also ordered the Grunstad Group (various entities associated with PBCSA) to post with the Clerk of Court a performance bond in the amount of $500,000 to guarantee

payment of the fine imposed on PBCSA, and to monitor the environmental compliance program that PBCSA was directed to implement. In an Order dated December 19, 1994, the Court modified its Order of August 30, 1994 by allowing the Grunstad Group and PBCSA to post a performance bond of only $100,000. In June of 1995, the Defendant, having posted $40,000 toward the performance bond, filed a motion to extend the deadline for posting the remaining $60,000 on the bond to no later than December 31, 1995. The Court granted the requested relief on June 30, 1995. On October 30, 1995, PBCSA filed a voluntary Chapter 11 petition for bankruptcy. The bankruptcy proceeding is still pending before the Bankruptcy Court in this District.

On December 29, 1995, PBCSA filed a motion to stay the financial conditions imposed at sentencing until March 31, 1996, in order to allow the Bankruptcy Court to receive and consider the Defendant's plan of reorganization. The United States filed a response in opposition to PBCSA's motion on January 19, 1996, asserting that the Defendant must continue to make monthly payments on the fine and post the additional $60,000 on the performance bond despite the Chapter 11 filing.

In an Order dated February 23, 1996, this Court denied the Defendant's motion to stay, and offered the following analysis:

PBCSA first asserts that its obligation to pay the criminal fine is stayed by the language of 11 U.S.C. § 362(a), which provides for an automatic stay on certain proceedings against a debtor. Section 362(b)(1), however, explains that the filing of voluntary bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." The Eleventh Circuit has not squarely addressed the question of whether a defendant's obligation to pay a fine pursuant to a criminal sentence represents a "continuation" of the proceedings that led to the sentence. Nevertheless, both the Fourth and the Sixth Circuits have endorsed this conclusion.

In *United States v. Troxler Hosiery Co., Inc.,* 796 F.2d 723 (4th Cir.1986), *cert. denied,* 480 U.S. 930 [107 S.Ct. 1566, 94 L.Ed.2d 758] (1987), the court adopted and affirmed the district court's holding that the automatic stay of section 362(a) did not extend to the payment of a criminal contempt fine. The defendant, Troxler, had been convicted of criminal contempt, and fined $80,000 plus costs for removing previously seized hazardous sleep wear and contracting for its sale in a foreign county, and for falsifying company records to conceal its actions. Troxler was given twelve months to pay the fine, but three months later, filed a voluntary bankruptcy petition under Chapter 11. The government filed proof of a secured claim in the amount of the fine and costs, no part of which had been paid. The Government also filed an adversary proceeding complaint with the Bankruptcy Court, seeking a declaratory judgment that the automatic stay did not apply to its attempts to collect the criminal fine. The Bankruptcy Court ruled as a matter of law that the automatic stay applied to the government's efforts to collect the contempt fine. On appeal, however, the district court reversed the bankruptcy judge's order, holding that the automatic stay did not apply to the collection of fines and costs for criminal contempt. *United States v. Troxler Hosiery Co., Inc.,* 41 B.R. 457, 462 (M.D.N.C.1984). Relying on section 362(b)(1), the district court offered the following analysis in support of its conclusion:

> Sentencing of a criminal defendant, whether it be imprisonment or imposition of a fine, fixes and declares the legal consequences of predetermined guilt. A criminal sentence without accompanying authority to ensure service by the defendant as ordered would be meaningless. Action by the government to enforce the terms of a sentence are plainly a continuation of the entire criminal proceeding.

*Id.* at 460 (citation omitted).... The Sixth Circuit endorsed the Fourth Circuit's view in a footnote to its opinion in *United States v. Coluccio,* 19 F.3d 1115 (6th Cir. 1994). In *Coluccio,* the Court of Appeals affirmed the district court's grant of a writ of execution against the defendant to se-

cure payment of a criminal fine. The defendant suggested that, although he had not yet filed for bankruptcy, he would be protected by the bankruptcy code's automatic stay provisions. The Sixth Circuit acknowledged that the filing of a bankruptcy petition automatically stays legal proceedings against a debtor to enforce judgments obtained prior to the filing of the bankruptcy petition. *Id.* at 1117 n. 2 (citing 11 U.S.C. § 362(a)(1), (2)). It added, however, that "the protective stay ... is not absolute, and allows enforcement of criminal laws *and penalties incident thereto.*" *Id.* (emphasis added) (citation omitted). Therefore, according to the Court, even if the bankruptcy code applied to the defendant, it would not eliminate his continuing liability for criminal fines. *Id.* A number of district courts have concurred with the reasoning of *Troxler* and *Coluccio. See, e.g., In re Sims,* 101 B.R. 52, 54–55 ([Bankr.] W.D.Wis.1989); *Gilliam v. Metropolitan Gov't of Nashville,* 67 B.R. 83, 87 ([Bankr.] M.D.Tenn.1986); *134 Baker Street, Inc. v. State of Georgia,* 47 B.R. 379, 380–82 (N.D.Ga.1984).

The Defendant points out that several bankruptcy courts have reached the opposite conclusion, holding that the automatic stay of section 362(a) does apply to the payment of criminal fines. *See, e.g., In re Woodside,* 161 B.R. 969 (Bankr.S.D.Ill. 1994); *In re Landstrom Distributors, Inc.,* 55 B.R. 390 (Bankr.C.D.Cal.1985). For the most part, however, these cases rest on the premise that when the United States seeks to compel payment of a criminal fine, it acts as the equivalent of an ordinary creditor seeking to collect a money judgment. *See* 11 U.S.C. § 362(b)(5) (noting that the automatic stay does not apply to the enforcement of a judgment obtained in an "action or proceeding to enforce the government's police or regulatory power" as long as the judgment is "other than a money judgment"). We disagree. A criminal fine imposed after an adjudication or plea of guilt is ordered for the benefit of the public at large, as a sanction designed to punish for past noncompliance and prevent future noncompliance with the criminal law. In other words, a criminal fine rests on twin purposes of penalizing and

deterring wrongdoing, rather than a need to compensate the United States for its interest in a "debt" or other pecuniary loss that the Government incurred as a result of the defendant's conduct. Indeed, PBCSA's proposed reading of section 362(b)(5) would eviscerate section 362(b)(1), because the Government's right to commence or continue criminal proceedings against a bankrupt debtor is of no moment unless the Government also is entitled to enforce the penalties imposed at the culmination of the proceedings. For all of the foregoing reasons, therefore, we are unpersuaded by the bankruptcy court holdings in *Landstrom* and *Woodside,* and instead follow the Fourth and Sixth Circuits by confirming that section 362(b)(1) precludes PBCSA from invoking the automatic stay provisions of section 362(a)(1) to delay payment of the criminal fine imposed on August 30, 1994.

As an alternative argument, PBCSA seems to suggest that, even if the automatic stay of section 362(a) is inapplicable, this Court should exercise its inherent authority to postpone the resumption of monthly payments on the fine until the Bankruptcy Court approves PBCSA's reorganization plan. The Defendant offers no support for this argument, which we believe conflicts with the spirit, if not the letter, of section 362(b)(1). Ordering a stay of compliance with unequivocal criminal sanctions after a defendant files a voluntary bankruptcy petition would turn the Bankruptcy Courts into a "haven for criminal offenders." *See Troxler Hosiery,* 41 B.R. at 460 (quoting legislative history of section 362(b)(1)). At all events, we can find no sound basis to stay the obligations imposed on the Defendant by this Court.

Order of February 23, 1996 at 2–7.

## II.

The Defendant has now filed a motion requesting re-evaluation of our February 23, 1996 Order in light certain developments in the bankruptcy action. While the motion to stay was pending before this Court, PBCSA applied to the bankruptcy court for permission to resume its monthly payments toward the fine. On March 4, 1996, the bankruptcy judge issued an order authorizing the Defendant to continue making monthly payments in the amount of $8,333.33. However, he directed that the payments go into an interest bearing escrow account, as opposed to the United States Treasury. PBCSA apparently did not ask for permission to (1) make payment for the months in which it failed to make payment or (2) pay the $60,000 owed on the bond.

■ In its motion for re-evaluation, PBCSA explains that it is uncertain as to its obligations in light of the "conflicting" decisions from this Court and the bankruptcy court.[1] The Defendant asks this Court to conduct a hearing and/or vacate its ruling in order to eliminate a perceived conflict with the bankruptcy court's March 4th Order. The United States has opposed this request, arguing that this Court's Orders require full and immediate compliance with the criminal judgment—regardless of what relief Palm Beach Cruises does or does not seek from the bankruptcy court. The Government characterizes PBCSA's motion as yet another attempt to escape the consequences of its criminal activity.

■ We agree that the proceedings before the bankruptcy court do not alter the Defendant's responsibility to comply with the criminal judgment or satisfy the unambiguous Orders of this Court. As this Court explained in unequivocal terms in its February 23d Order, PBCSA's duty to meet the conditions of the judgment imposed against it is *not* contingent on the rulings of the bank-

---

1. PBCSA does not present new law or new facts to support reconsideration of our holding that a voluntary bankruptcy petition does not stay a defendant's obligation to ensure full compliance with a criminal judgment entered against it. At all events, we emphasize that motions for reconsideration are disfavored, and should only be granted where the movant shows newly discovered evidence, clear error, manifest injustice, or an intervening change in controlling law. *See Virgin Atlantic Airways, Ltd. v. National Mediation Board,* 956 F.2d 1245, 1255 (2d Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); *Z.K. Marine, Inc. v. M/V Archigetis,* 808 F.Supp. 1561, 1563 (S.D.Fla.1992).

ruptcy court. The fact that the Defendant has sought (and obtained) the bankruptcy court's permission to resume payments on the fine is irrelevant to its obligations under the sentence imposed in this forum. Notably, Palm Beach Cruises offers no explanation for its apparent failure to seek permission from the bankruptcy court to post the remaining $60,000 due on the performance bond, or make payment for the past due monthly instalments on its criminal fine.

■ Reduced to its core, PBCSA's apparent suggestion that a party in voluntary bankruptcy has no obligation to make payments on a criminal fine unless it (1) applies to the bankruptcy court for permission and (2) the bankruptcy court grants that permission is nothing more than a recapitulation of the arguments that this Court rejected when it refused the Defendant's application for a stay. We reiterate that the filing of a voluntary petition for bankruptcy does not in any sense shift jurisdiction over the enforcement of criminal fines to the bankruptcy courts, or permit a bankruptcy judge to alter the time or manner of fine payments mandated in an Order of this Court. *See, e.g., Coluccio,* 19 F.3d at 1117 n. 2; *Troxler Hosiery,* 41 B.R. at 460–62. The Defendant's concern that compliance with the Court's criminal penalties may "subject [it] to sanctions in the bankruptcy proceedings" is not persuasive. To the extent that PBCSA now finds itself in an uncomfortable position, its present quandary is rooted in the illegal acts that led to its plea of guilty.

As of the date of this Order, Palm Beach Cruises has not posted the additional $60,000 due on the performance bond, despite this Court's unambiguous Order that this amount be posted before December 31, 1995. *See* Order of June 30, 1995. Palm Beach Cruises is also $33,332.00 in arrears on the monthly fine payments due for the months of November, 1995 through and including February, 1996. The Defendant has not indicated its willingness to voluntarily satisfy these obligations.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendant's Motion Requesting Reevaluation of Request for Stay of Financial Conditions in View of Order of Bankruptcy Court and Request for Hearing is DENIED. *The Defendant shall within twenty (20) days of the date of this Order*:

(1) Post a performance bond in the amount of $60,000, for a total performance bond of $100,000, as partial security for the payment of the total criminal fine of $500,-000;

(2) Pay the amount of $33,332.00 to the United States Treasury for missed fine payments for the months of November, 1995 through February, 1996; and

(3) Continue monthly payments in the amount of $8,333.33 as directed by the United States Probation Office.