**Phillip A. TALLEY, Appellant,**

v.

**ALABAMA DEPARTMENT OF PUBLIC SAFETY and W.M. Coppage, In His Official Capacity Appellees.**

**No. CIV.A. 06–AR–4819–S.**

United States District Court,
N.D. Alabama,
Eastern Division.

Jan. 30, 2007.

---

**14.** *Id.*

LeRoy Alan Cobb, Anniston, AL, for Phillip A. Talley, Appellant.

J. Haran Lowe, Jr., Alabama Department of Public Safety, Montevallo, AL, for Alabama Department of Public Safety, W M Coppage In his official capacity, Appellees.

## MEMORANDUM OPINION

ACKER, District Judge.

On July 27, 2006, the Bankruptcy Court of the Northern District of Alabama (the "Bankruptcy Court"), Hon. James J. Robinson, ordered the dismissal of an adversary proceeding brought by appellant, Phillip A. Talley ("Talley"), against appellees, the Alabama Department of Public Safety (the "DPS") and W.M. Coppage (collectively, the "appellees"). Talley now brings a timely appeal from that order.

The court's jurisdiction over this appeal is based on 28 U.S.C. § 158(a)(1).

### I. Standard of Review

The Bankruptcy Court's findings of fact are subject to a clearly erroneous standard of review, while its conclusions of law are subject to *de novo* review. *In re Richard W. Paschen*, 296 F.3d 1203, 1205 (11th Cir.2002).

### II. Procedural History

On January 24, 2006, Talley, who was and is the debtor in a Chapter 13 proceeding, brought an adversary proceeding, alleging that the suspension of his driver's license violated the automatic stay imposed by § 362 of the Bankruptcy Code (the "Code"). The Bankruptcy Court concluded that the suspension was merely a continuation of a prior criminal proceeding under § 362(b)(1) of the Code and was therefore exempted from the automatic stay. Accordingly, Talley's action was dismissed. Talley's motion to alter was denied on September 9, 2006.

### III. Facts

Talley has a poor driving record. He has numerous traffic convictions and has regularly failed to pay the fines levied against him. On October 14, 2005, Talley filed a petition for relief under Chapter 13 of the Code. The **only** debts listed on his petition were eight unpaid fines for traffic violations, totaling $3,280.50. Talley's Chapter 13 plan proposed to pay 100% of the fines and fees over a 60 month period. The plan was confirmed on December 19, 2005.

On November 2, 2005, before the proposed plan had been confirmed, the St. Clair County District Court ordered the suspension of Talley's driver's license. Although this suspension occurred after

Talley filed his petition, the state court's action was in response to his continuing failure to pay his criminal fines. A copy of the order was forwarded to the DPS, which suspended Talley's license, effective November 7, 2005.

## IV. Analysis

§ 362(b)(1) creates an exception to the usual protections afforded to a debtor who petitions for relief under the Code. Normally, the automatic stay created by § 362(a) prevents creditors from recovering against a post-petition debtor outside of a repayment plan sanctioned by the bankruptcy court. However, § 362(b)(1) provides: "[t]he filing of a petition ... does not operate as a stay under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against a debtor ...." 11 U.S.C. § 362(b)(1).

The purpose of this provision is to ensure that the Code does not shield those who would avoid a fine or punishment properly imposed by a court of law. In other words, "[t]he bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension." H.R. No. 95–595 at 342, 95th Cong., 1st Sess. (1977). § 362(b)(1) is also indicative of the general policy that federal courts should abstain from interfering in state criminal proceedings. The Supreme Court has stated that the language of the Code must be considered "in light of the interests of the States in unfettered administration of their criminal justice systems." *Kelly v. Robinson*, 479 U.S. 36, 44, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986). *See also In re Sims*, 101 B.R. 52, 53 (Bkrtcy.W.D.Wis.1989).

The Bankruptcy Court rightly concluded that the suspension of Talley's license was a "continuation of a criminal action or pro-

ceeding" and was therefore not prohibited by the automatic stay. Mem. Op. at 3. This court is in full agreement with that conclusion, which, arguably was a mixed question of fact and law. To the extent it was a factual question, the Bankruptcy Court's answer was not clearly erroneous. To the extent it was a legal question, the Bankruptcy Court was correct. Both a plain reading of the statute and a review of the relevant case law indicate that the suspension of Talley's license is precisely the type of conduct § 362(b)(1) excludes from bankruptcy protection.

Talley argues that the purpose of the Code will be thwarted unless a debtor facing criminal fines is granted the protection of the automatic stay. According to Talley, the " 'adjustment of debts' of an individual" is the foundation of the Chapter 13 proceeding. Because an unpaid criminal fine should be characterized as a debt, the argument runs, it should be treated by the Code as the equivalent of other, non-punitive debts. In the abstract, Talley's argument is not so far-fetched. Indeed, the Supreme Court seemed to recognize as much in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), a case heavily relied upon by Talley. In that case, the Court held that a restitution obligation imposed as a condition of probation in a state court criminal proceeding constituted a "debt" for purposed of bankruptcy protection. *Id.* at 560, 110 S.Ct. 2126. However, Talley is mistaken in thinking that the *Davenport* decision buttresses his position in this case for two reasons. First, and most importantly, Congress statutorily superceded the relevant portion of the holding in *Davenport*, amending the Code to except restitution orders from discharge under Chapter 13.[1] *See* Pub.L.

---

1. Congress left in place the general holding in *Davenport* regarding the breadth of the definition of a "claim" under the Code. *See Johnson*

v. *Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

101–581, 104 Stat. 2856 (Nov. 15 1990) (adding 11 U.S.C. § 1328(a)(3)). Second, *Davenport* held that state-imposed restitution awards do not fall within the scope of the § 362(b) exemption. Where, as in this case, the issue is not one of restitution awards but rather of criminal sanctions, *Davenport*, even were it not statutorily superceded, is irrelevant.

Talley's second, and equally unsuccessful, argument is that the suspension of his license is merely an under-handed ploy to exact payment from him in contravention of the bankruptcy protection he now enjoys. In support of his argument, Talley offers the following quote: " § 362(b)(1) does not exempt from the stay a criminal proceeding whose **sole purpose** is to collect a debt." *In Re Muncie,* 240 B.R. 725 (Bank.S.D.Ohio 1999) (emphasis added). Appellant's Br. at 15. What Talley understandably fails to mention in his discussion of the case is that the criminal "prosecution" at issue in *Muncie* was instigated by a private debtor and was, in the court's view, merely "a guise for a collection effort." *Muncie,* 240 B.R. at 727. Moreover, even were the court to ignore the marked factual differences between *Muncie* and this case, Talley's argument fails because there is no indication that appellees's conduct was solely, or even partially, designed to strong-arm Talley to pay his fines ahead of schedule. To the contrary, it seems that Talley's bankruptcy filing was more likely a ploy to frustrate criminal sanctions.

Talley ultimately lost his license because he did not pay the fines that were levied against him before he filed for Chapter 13 protection. There is no question but that the fines are criminal in nature; they were levied against Talley because of his convictions for violating multiple traffic laws. Nor is there any indication that the appellees were attempting a type of "end-run" around the strictures of the Code, suspending Talley's license to secure prompt payment of the outstanding fines. Therefore, the court easily concludes, as did the Bankruptcy Court, that the action taken by appellees was a part of a prior criminal proceeding.

Thus, the sole remaining question is whether the suspension of Talley's license was a "commencement or continuation" of a criminal proceeding for purposes of § 362(b)(1). The Bankruptcy Court answered in the affirmative, holding that the suspension was a continuation of multiple criminal proceedings against Talley. Therefore, that court held that the suspension of Talley's license was not prohibited by the automatic stay. In its memorandum opinion, the Bankruptcy Court stated:

> [U]pon the Plaintiff's default on his monetary obligations (originally ordered in lieu of incarceration), the District Court had two options: incarceration or revocation of the Plaintiff's driver's license. Certainly if the District Court could incarcerate the Plaintiff upon his default, and such incarceration would be a continuation of criminal proceedings, it could also revoke the [license] as a continuation of the criminal proceedings. Mem. Op. at 4

This statement accurately places the suspension into its proper context: this was not an independent action on the part of appellees, but rather the inevitable consequence of Talley's not paying criminal fines. Therefore, for purposes of § 362, the suspension constituted a continuation of a criminal action.

Other courts have reached the same, or a similar, conclusion. For example, multiple courts have held that incarcerating a debtor does not violate the automatic stay if the incarceration results from the failure to pay criminal fines or costs. *In re Perez,* 220 B.R. 216 (Bankr.D.N.J.1998); *In the Matter of Cuevas,* 205 B.R. 457 (Bankr.

D.N.J.1997); *In the Matter of Sims,* 101 B.R. 52 (Bankr.W.D.Wis.1989). In this case, where the debtor is not faced with incarceration, Talley's position is even less compelling.

Finally, appellees argue that they were not properly joined as parties to the original adversarial proceeding brought by Talley. This position is based on appellees' ignorance of Talley's filing of his petition. The proper party, they argue, is the St. Clair County District Court which actually ordered the suspension of Talley's license on November 3, 2003. While appellees may, in fact, be correct on this procedural point, the argument is mooted by this court's conclusion that the dismissal of the adversary proceeding is due to be affirmed.

### V. Conclusion

For the foregoing reasons, the court finds that Talley's claim is without merit. Therefore, the Bankruptcy Court's order dismissing Talley's action is AFFIRMED.