**In the Matter of Eric K. PERRIN, Debtor.**

**Bankruptcy No. 97–13037.**

United States Bankruptcy Court, D. New Jersey.

April 22, 1999.

Seymour Wasserstrum, Vineland, New Jersey, for debtor.

Richard Tonetta, Vineland, New Jersey, for Vineland.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

The question presented here is whether a municipal court may resentence a Chapter 13 debtor to incarceration or community service in lieu of a fine following the confirmation of a plan which proposes to pay the traffic fine in full through the plan. Debtor seeks here to set aside the order of the Vineland Municipal Court which vacated his fine and resentenced him to community service, and to compel the municipal court to accept the payment of his fine as provided for in his confirmed Chapter 13 plan.

## FACTS

Debtor, Eric K. Perrin, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 31, 1997. He scheduled unsecured debt in the total amount of $11,380.00, including a debt for unpaid traffic fines owed to the Vineland Municipal Court in the amount of $350.00.[1] Debtor's Chapter 13 plan, proposing to pay in full traffic fines due to four municipali-

---

1. Debtor's court fine arose from his conviction for the offense of driving while his license was suspended or revoked in violation of N.J.S.A. 39:3–40.

ties, including Vineland, plus the balance of counsel fees, was confirmed without objection on March 11, 1998 at $65.00 per month for 60 months. Debtor is current in making his monthly payments.

In April 1998, debtor received a notice from the Vineland Municipal Court, dated April 25, 1998, seeking to compel the debtor to pay his outstanding fines. Judge John A. Kaspar apparently considered resentencing the debtor to community service in lieu of payment of the fines, but took no formal action at that time.

On May 11, 1998, debtor filed a motion seeking to prevent the Vineland Municipal Court from issuing a warrant for his arrest and from revoking his driving privileges for being delinquent in making payments toward his court imposed fine. Debtor also sought to compel the municipal court to abide by the terms of his confirmed Chapter 13 plan and to accept payment of his fine as provided for in his plan.

The Vineland Municipal Court sent a second notice to the debtor, dated May 23, 1998, threatening the loss of the debtor's driving privileges if he did not pay the amount due.

This court issued a written opinion, dated July 20, 1998, in which we concluded that the municipal court's action in sending collection notices to the debtor violated the automatic stay, and that the municipal court was bound by the debtor's plan. We distinguished this case from our decision in *In re Cuevas*, 205 B.R. 457 (Bankr.D.N.J. 1997) wherein we had applied the New Jersey Supreme Court's characterization of incarceration under N.J.S.A. 39:5–36 as substituted punishment rather than debt collection and held that a municipal court could resentence the debtor preconfirmation to community service in lieu of paying the fine. In *Cuevas*, the municipal court gave up its right to collect delinquent fines from the debtor. In contrast, the municipal court here was attempting to compel the payment of its claim. At that time, we declined to reach the question of the municipal court's ability to resentence the debtor post confirmation, ruling that such a determination would be premature.

Subsequent to our decision, the Vineland Municipal Court sent a notice to the debtor, dated July 23, 1998, advising him that reconsideration of his case had been scheduled for July 30, 1998. Appearing pro se, the debtor was sentenced to nineteen days of incarceration, in lieu of which the debtor could perform 200 hours of community service.[2] In the July 30, 1998 judgment entered by Judge Kaspar, the court acknowledged that the notices demanding payment sent to the debtor, which were the subject of our last decision in this case, were sent in error. The court explained that it's policy, "upon being placed on notice of a bankruptcy being filed and/or confirmed, [is] to 'advance' the default date 5 years so as to avoid the automatic generation of such notices."

Judge Kaspar framed the issue presented as "whether payments should be accepted by this court for the above noted fines in the manner as prescribed [in the confirmed Chapter 13 plan]." He noted first that the fine imposed upon the debtor was punishment imposed by a sovereign court for violation of the law, default in the payment of which may result in incarceration. N.J.S.A. 39:5–36. Second, Judge Kaspar believed that the court could not accept payments over the term of the Chapter 13 plan because under New Jersey law, fines must be paid "no later than 6 months from the date of the conviction." N.J.S.A. 39:4–203.1.[3] Finally, Judge Kas-

---

2. Debtor's bankruptcy counsel had a scheduling conflict, and was unable to appear before the municipal court. His adjournment request was apparently denied.

3. In this case, the debtor entered a guilty plea of driving while revoked in March 1994.

Upon sentencing, the debtor entered a consent order to pay the court imposed fine in installments. Under New Jersey law, such installment payment plans must be completed within six months of conviction. N.J.S.A. 39:4–203.1. The debtor failed to complete

par cited the debtor's "arrogance" in continuing to drive while suspended and in failing to honor the installment payment order over the last four years, and sought to "send a message" that the court can enforce its own rulings. For these reasons, Judge Kaspar vacated the debtor's fine and resentenced him to community service.

The debtor now comes before this court seeking to vacate the municipal court's order and to bind the municipal court to the terms of his confirmed Chapter 13 plan.

## DISCUSSION

The debtor herein contends that the confirmation of his Chapter 13 plan providing for the full payment of court imposed fines deprives the municipal court of its authority, under state law, to resentence him. The municipal court believes that any term of repayment other than that dictated by state statute is unacceptable and that it retains the authority to resentence the debtor notwithstanding the confirmation of debtor's plan. In *In re Cuevas*, 205 B.R. 457 (Bankr.D.N.J.1997), we concluded that a municipal court could resentence a debtor preconfirmation for motor vehicle violations in lieu of requiring the repayment of a fine. This case requires us to consider the impact of confirmation on the municipal court's authority to modify the debtor's punishment.

We will first review the criminal proceeding exception to the automatic stay, examine the applicability of the exception to quasi-criminal proceedings, and then consider the impact of the confirmation of debtor's Chapter 13 plan.

I. The Automatic Stay and the Criminal Proceeding Exception.

■ It is axiomatic that the automatic stay serves as "one of the fundamental debtor protections provided by the bankruptcy laws." H.R.Rep. No. 595, 95th Cong., 1st Sess. 174 (1977). It enjoins the commencement or continuation of judicial actions against the debtor, the enforcement of pre-petition judgments, and other acts to collect pre-petition claims.[4] *See In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 637 (3d Cir. 1998) ("The legislative history to section 362 and our jurisprudence leave no doubt that the scope of the automatic stay is broad.").

■ An important exception to the automatic stay is "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). This exception underscores the principle that "[t]he bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978).

In fact, "[c]ourts traditionally have been reluctant to interpret federal bankruptcy statutes to remit state criminal judg-

---

these payments for three years prior to filing for relief under Chapter 13.

4. 11 U.S.C. § 362 provides in relevant part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
. . .
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

ments." *Kelly v. Robinson*, 479 U.S. 36, 44, 107 S.Ct. 353, 358, 93 L.Ed.2d 216 (1986). Our jurisprudence illustrates "a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings". *Id.* at 47, 107 S.Ct. at 360. It is generally accepted that "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. [The Supreme] Court has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions.'" *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971)). This policy of noninterference with criminal proceedings was tested by the Supreme Court in *Kelly v. Robinson*, *supra*, and in *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 560–61, 110 S.Ct. 2126, 2132, 109 L.Ed.2d 588 (1990).

In *Kelly v. Robinson*, the Supreme Court determined that restitution obligations imposed as a condition of probation were dischargeable in Chapter 7. The Court expressed concern that if restitution orders were determined to be dischargeable, such a ruling "could lead to federal remission of judgments imposed by state criminal judges". *Id.* at 49, 107 S.Ct. at 360. "This prospect, in turn, would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems. [The Court] did not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges." *Id.* at 49, 107 S.Ct. at 360–61. The Court "recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Id.* at 49, 107 S.Ct. at 361.

In the Chapter 13 context, in *Davenport*, the Supreme Court reiterated that:

Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses. [I]t is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and at the same time to preclude probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13. Congress could well have concluded that maintaining criminal prosecutions during bankruptcy proceedings is essential to the functioning of government but that, in the context of Chapter 13, a debtor's interest in full and complete release of his obligations outweighs society's interest in collecting or enforcing a restitution obligation outside the agreement reached in the Chapter 13 plan.

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 560–61, 110 S.Ct. 2126, 2132, 109 L.Ed.2d 588 (1990). The Court concluded that restitution obligations were dischargeable in Chapter 13 because Congress had not included such debts in exceptions to discharge under section 1328. The Court recognized that "permitting discharge of criminal restitution obligations may hamper the flexibility of state criminal judges in fashioning appropriate sentences and require state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests." *Id.* at 564, 110 S.Ct. at 2133. However, the Court found that "the concerns animating *Younger* cannot justify rewriting the Code to avoid federal intrusion." *Id.*

Justice Blackmun, in his dissent, remarked that a "bankruptcy court discharge of a criminal restitution order is a deep intrusion by the federal courts into the State's sovereign power. It vacates a criminal sentence that has presumably been entered in full accord with all substantive and procedural mandates of the Constitution." *Id.* at 573, 110 S.Ct. at 2138. It encourages the use of the Bank-

ruptcy Code "as a shield to protect a criminal from punishment for his crime." *Id.* at 564, 110 S.Ct. at 2134.

In the context of considering amendments to Chapter 13 following the *Davenport* decision, these same concerns were echoed during legislative debates in 1990, as follows:

> The judgment of sentencing courts and legislators that rehabilitation is the most effective form of punishment will be tempered by the knowledge that convicted criminals easily may avoid a sentence requiring restitution merely by obtaining a chapter 13 discharge. Sentencing courts will be faced with a dilemma. The sentencing judge must either risk that a Federal bankruptcy judge will undermine a restitution order, thus absolving the convicted criminal from punishment, or impose a harsher and less appropriate term of imprisonment, a sentence that the Federal bankruptcy court will be unable to undermine.

136 Cong.Rec. S17603 (daily ed. Oct. 27, 1990) (remarks of Sen. Grassley).

In 1990, section 1328(a) was amended to add subsection (a)(3), which deemed restitution claims to be nondischargeable in Chapter 13 cases. *See* CRIMINAL VICTIMS PROTECTION ACT OF 1990, PUB.L. 101–581, § 3(3), 104 Stat. 2865 (Nov. 15, 1990); CRIME CONTROL ACT OF 1990, PUB.L. 101–647, § 3103(3), 104 Stat. 4916 (Nov. 29, 1990). Section 1328(a)(3) was amended again in 1994 to include criminal fines as nondischargeable claims. BANKRUPTCY REFORM ACT OF 1994, PUB.L. 103–394, § 302, 108 Stat. 4132 (Oct. 22, 1994).

The action taken by Congress emphasized the continuing vitality of the fundamental policy expressed in *Kelly v. Robinson* against federal interference with state criminal prosecutors. *See also Hucke v. State of Oregon,* 992 F.2d 950, 954 (9th Cir.), *cert. denied,* 510 U.S. 862, 114 S.Ct.

178, 126 L.Ed.2d 137 (1993) (state court judge continues to exercise discretionary authority over a criminal defendant even after the defendant has filed for bankruptcy).

## II. Quasi–Criminal Action or Proceeding.

█ In *Cuevas,* we held "that motor vehicle violations may be characterized as 'quasi-criminal' statutes" which fall "within the meaning of 'criminal action' as that term is used in § 362(b)(1)." 205 B.R. 457, 460 (Bankr.D.N.J.1997). *See also In re Corbo,* 117 B.R. 109, 111 (Bankr.D.N.J. 1990) (quasi-criminal statute qualifies as "criminal action" as long as it is not a disguised collection device); *In re Novakovic,* Adv. No. 81–0478 (Bankr.D.N.J. Feb. 18, 1982) (unpublished opinion) (section 362(b)(1) encompasses both criminal and quasi-criminal actions). *But see In re Del Ross,* Case No. 96–30427 at 9 (Bankr. D.N.J. Feb. 27, 1998) (unpublished opinion) (362(b)(1) should be read narrowly and does not include quasi-criminal actions). We revisit here the phrase "quasi-criminal" and reconsider whether such actions were intended to be included within the section 362(b)(1) exception.

Under New Jersey law, a motor vehicle violation is not defined as a "crime" pursuant to the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1–4.[5] Nonetheless, New Jersey courts commonly view motor vehicle violations as "quasi-criminal," characterizing such violations as " 'a class of offenses against the public "which have not been declared crimes, but wrongful against the general or local public which it is proper should be repressed or punished by forfeitures and penalties." ' " *State v. Widmaier,* 157 N.J. 475, 494, 724 A.2d 241 (1999) (quoting *State v. Laird,* 25 N.J. 298, 302–03, 135 A.2d 859 (1957)) (quoting *Wig-*

---

5. N.J.S.A. 2C:1–4 provides in relevant part that "[a]n offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6

months is authorized, constitutes a crime within the meaning of the Constitution of this State."

gins v. City of Chicago, 68 Ill. 372 (1873)).[6] New Jersey courts "treat traffic offenses much like criminal offenses and ... accord to suspected traffic offenders a panoply of rights approaching those of a criminal defendant." *State v. Rodriguez,* 294 N.J.Super. 129, 136, 682 A.2d 764 (Law Div.1996). *See also State v. Garthe,* 145 N.J. 1, 8, 678 A.2d 153 (1996) (DWI charge before municipal court is a quasi-criminal proceeding); *State v. Dively,* 92 N.J. 573, 585–86, 458 A.2d 502 (1983) (motor vehicle violations are quasi-criminal in nature); *State v. DiCarlo,* 67 N.J. 321, 327, 338 A.2d 809 (1975) (DUI proceeding is quasi-criminal); *No Illegal Points, Citizens for Drivers Rights, Inc. v. Florio,* 264 N.J.Super. 318, 332, 624 A.2d 981 (App.Div.), *certif. denied,* 134 N.J. 479, 634 A.2d 526 (1993); *State v. Walten,* 241 N.J.Super. 529, 533, 575 A.2d 529 (App.Div.1990).

As one New Jersey court has explained:

Under the revised penal laws of New Jersey ... numerous petty offenses formerly prosecuted as crimes, thus carrying the right to indictment and trial by jury, were down-graded and are now quasi-criminal offenses under the Disorderly Persons Act....

The provisions of the Disorderly Persons Act are a police measure designed to afford a speedy and effective remedy where the offense was less aggravating in circumstances.... The courts of general criminal jurisdiction could not possibly function effectively in our complicated urban civilization if they alone had exclusive jurisdiction over all of the offenses enumerated in the Disorderly Persons Act.... The defendant is spared the brand of being adjudged a criminal, with all of its political, business and social implications; the punishment meted out to him is less severe than that imposed on corresponding crimes, and he is given the right to a speedy trial De novo in the County Court.

On the whole, the protection with which the law surrounds the accused in a criminal prosecution is available alike in quasi-criminal offenses. In all cases the defendant must be informed in writing concerning the nature and cause of the accusation or of the indictment for crime, and also of a sworn complaint for a quasi-criminal offenses. The burden of proof beyond a reasonable doubt is the same, the rules of evidence apply alike, whether the offense be criminal or only quasi-criminal.

Upon principle, the same rules apply to crimes and quasi-criminal offenses, for liberty of the citizen is in jeopardy in either case.

*In re Garofone,* 80 N.J.Super. 259, 271–72, 193 A.2d 398 (Law Div.1963), *aff'd,* 42 N.J. 244, 200 A.2d 101 (1964) (citations omitted).

" 'Quasi-criminal' is not an empty label. The classification is in no sense illusory; it has reference to the safeguards inherent in the very nature of the offense, the punitive quality that characterizes the proceeding, and the requirements of fundamental fairness and essential justice to the accused." *State v. Laird,* 25 N.J. 298, 303, 135 A.2d 859 (1957). "[I]n its enlarged usage it embraces all offenses not crimes or misdemeanors, but in the nature of crimes; the prefix to the noun signifies resemblance, in a certain sense or degree" *Id.* at 302, 135 A.2d 859.

In *Cuevas,* we characterized the action of a municipal court in substituting incarceration for payment of a fine as quasi-criminal within the section 362(b)(1) "criminal action or proceeding" exception

---

6. In *State v. Widmaier, supra,* the New Jersey Supreme Court considered whether the Double Jeopardy Clause, which applies where the sanction involves a criminal penalty, prohibited the State from appealing a defendant's acquittal of a charge of refusing to take a breathalyzer test. The court recognized that motor vehicle violations are quasi-criminal offenses subject to the Double Jeopardy Clause. *Id.* at 496, 724 A.2d 241. Similarly, the penalties for refusing to take a breathalyzer test also constituted "criminal" penalties for purposes of the Double Jeopardy Clause. *Id.* at 500–01, 724 A.2d 241.

to the automatic stay. We relied in part on *In re Corbo*, 117 B.R. 109, 111–112 (Bankr.D.N.J.1990), where Judge Tuohey focused upon whether the court action was intended to punish or to collect a debt. *Id.* at 111–12. "If the State's real motive behind the prosecution of the Debtor is to collect a pre-petition debt, then the State's prosecution is not a 'criminal action' within the meaning of § 362(b)(1) and the automatic stay applies." *Id.* at 111.

*Corbo* referred to the unpublished decision in *In re Novakovic*, Adv. No. 81–0478 (Bankr.D.N.J. Feb. 18, 1982) in which Judge Hill had held that the exception provided for in section 362(b)(1) included quasi-criminal actions. In *Novakovic*, the debtor was charged with nine counts of failure to remit unemployment insurance contributions under N.J.S.A. 43:21–16(e). The court denied the debtor's request for a restraining order, finding that the state was seeking more than the collection of a debt. The state sought not only to punish the debtor, but also to deter similar actions by others. Judge Hill found that "Congress intended the word 'criminal' to have its common sense meaning and not be narrowly confined to indictable offenses." *In re Corbo*, 117 B.R. 109, 111 (Bankr. D.N.J.1990). *See also In re Perez*, 220 B.R. 216, 225 (Bankr.D.N.J.1998) (adopting *Cuevas* reasoning); *In re Sims*, 101 B.R. 52, 55 (Bankr.W.D.Wis.1989) ("When the government chooses to seek criminal sanctions for conduct which might give rise to civil liability, it is seeking to vindicate punitive and deterrent interests which differ, if only in degree, from those vindicated in a civil suit. It is the integrity of the criminal justice system which section 362(b)(1) protects.").

We readily reaffirm our holding in *Cuevas* that the quasi-criminal action of a municipal court in substituting incarceration, or community service in lieu of incarceration, for payment of a fine falls within the section 362(b)(1) "criminal action or proceeding" exception to the automatic stay. We have noted above that the right of the sovereign states to formulate and enforce penal sanctions, free from federal interference, "is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *Kelly v. Robinson*, 479 U.S. at 49, 107 S.Ct. at 361. There is no question that Judge Kaspar's order imposing incarceration or community service represents the imposition of penal sanctions against the debtor. There is no basis to distinguish between criminal and quasi-criminal proceedings in terms of actions of a federal court which would invalidate or interfere with the formulation and enforcement of penal sanctions by a state court.

## III. Effect of Confirmation.

Debtor's plan, providing for full payment of his outstanding traffic fines, was confirmed on March 11, 1998 without objection. The debtor seeks here to bind the municipal court to its treatment in his confirmed plan. Having determined that the municipal court's actions did not violate the automatic stay, we must consider the effect of the confirmation of the debtor's plan.

■ The finality of the terms of a Chapter 13 plan and its treatment of claims upon confirmation is well established. *In re Fesq*, 153 F.3d 113 (3d Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999); *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989); *In re Penn Central Transp. Co.*, 771 F.2d 762 (3d Cir. 1985), *cert. denied,* 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985). Once confirmed, a Chapter 13 plan "bind[s] the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The "confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir.1989).

There is no question that if the municipal court attempted to compel the debtor to remit his fine in a manner other than as provided for under his confirmed plan, the municipal court would be prohibited from doing so. Despite the municipal court's concern regarding state law provisions governing installment plans for payment of fines, the manner of payment of the debtor's fine is no longer a question of state law once a petition in bankruptcy is filed. The repayment of claims is governed by the Bankruptcy Code, even where it conflicts with state law. *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971) (the Supremacy Clause overrules the effect of conflicting state law); *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 513 (3d Cir. 1997) (where there is an irreconcilable conflict, state law must give way under the Supremacy Clause); *In re James*, 940 F.2d 46 (3d Cir.1991). Here, debtor's confirmed Chapter 13 plan provided for the full payment of municipal court fines, and the Vineland Municipal Court was bound by its terms.

However, the Vineland Municipal Court is not restructuring the debtor's repayment plan, but has actually vacated the debtor's fine. The court elected to waive its monetary claim. While section 1327 and *Szostek* would bind the municipal court to the treatment of its "claim", the Bankruptcy Code does not limit the court's authority to resentence the debtor, where the municipal court is not attempting to collect its debt, but is imposing punitive sanctions of incarceration or community service under N.J.S.A. 39:5–36.

A similar circumstance was presented in a criminal context in the case of *Hucke v. State of Oregon*, 992 F.2d 950 (9th Cir. 1993). In *Hucke*, the debtor was convicted of a crime and sentenced to five years probation, restitution, costs and a compensatory fine in the amount of $20,000. *Id.* at 951. The fines were payable at $500 per month. *Id.* Hucke filed a petition under Chapter 13 seeking to provide for his criminal judgment. His Chapter 13 plan was confirmed, providing for payments of twenty percent to each of his creditors. *Id.* Three days after his plan was confirmed, debtor was notified that he was in violation of his probation.

At the probation revocation hearing, debtor argued that the court should accept a modification to his Chapter 13 plan that would allow for most or all of his fines to be paid. *Id.* The state court judge declined this offer. He explained:

> I don't intend to punish the defendant for filing bankruptcy. I just have to have a sentence that makes sense. And as we stand here right now, the compensatory fine has been removed as an option for this court, and I accept that. The question is ... what are the alternatives to that option?

*Id.* The court explained:

> this crime that he committed under the laws of the State of Oregon is presumptively a penitentiary offense, 36 months. It takes extraordinary reasons to depart from that. The defendant has destroyed the ability of this court to fashion a sentence that would permit that to occur; secondly, he's destroyed his credibility with this court; and thirdly, he'd demonstrated to me he continues to place himself first and his victim and this state second, and that he's not a capable candidate for that probationary sentence, that I have no way to fashion one that would be satisfactory that would indicate that we wouldn't be just going through all this again.

*Id.* at 952. The court determined that the debtor was in violation of his probation and resentenced him to 36 months imprisonment. *Id.* The debtor filed an adversary proceeding contending that the state court was in violation of the automatic stay. The bankruptcy court found that the state's court action was an attempt to collect a debt. The district court affirmed. On appeal, the Ninth Circuit reversed.

The Ninth Circuit agreed that "if the probation hearing had as its aim the collection of the fine, then it would run afoul of § 362(a)(6).... On the other hand, if that proceeding were not a collection effort, then it would be a 'continuation of a criminal action or proceeding against a debtor' and exempt from the stay." *Id.* at 953. Underscoring that the restitution obligation had been vacated, the Circuit concluded that the probation revocation hearing was not a collection attempt. Debtor's probation was not revoked because he failed to pay his fine, but rather "because the purpose of Hucke's probation was not being served." *Id.* at 954. The Circuit found that:

> A state court judge may revoke probation at any time if the purposes of probation are not being met, and [the state court] made such a judgment here. Hucke is asking this court to tell a state court judge that he no longer has this discretionary authority once a defendant has filed for bankruptcy. This outcome is untenable.

*Id.*

Here, Judge Kaspar vacated all remaining fines due to the Vineland Municipal Court, and determined to impose punishment upon the debtor on the basis of a violation of a quasi-criminal offense. The punishment imposed, incarceration in lieu of which community service could be performed by the debtor, was "tantamount to a criminal penalty." *State v. Widmaier,* 157 N.J. at 492, 724 A.2d 241. The confirmation of debtor's Chapter 13 plan did not preclude the continuation of Judge Kaspar's discretionary authority to fashion appropriate punitive and deterrence measures as a consequence of the quasi-criminal motor vehicle violations committed by the debtor.

For the reasons advanced, debtor's motion to vacate the judgment of the Vineland Municipal Court dated July 30, 1998, and to compel the court to abide by his confirmed Chapter 13 plan is denied.

Counsel for the debtor shall prepare an order in conformance with the above opinion.