**In re Richard George BARRY, Debtor.**

**No. 99–44611.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 1, 2005.

L. Jed Berliner, Berliner Law Firm, Springfield, MA, for Debtor.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a "Motion of Debtor for Discharge Injunction Sanctions Against Rodney W. Brooks, Jr., Bernard Singleton,

and David A. Mech, Esq." (the "Motion for Sanctions"), and an associated "Application of L. Jed Berliner for Compensation as Counsel to Debtor" (the "Berliner Fee Application"). In papers and at trial, David A. Mech ("Attorney Mech") appeared through counsel to defend against the instant motion brought against him personally. He did not, however, represent his co-respondents, Rodney W. Brooks, Jr. ("Brooks") and Bernard Singleton ("Singleton"), whom he had represented in the earlier state court litigation, which was the stimulus for the Motion for Sanctions.

A trial in this matter having been conducted, the Court finds the following facts and reaches the following conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052 as made applicable to this contested matter by Rule 9014.

## I. FACTS AND POSITIONS OF THE PARTIES

Prior to filing the instant bankruptcy case, the Debtor operated and was the sole shareholder of Barry Moving & Storage, Inc. (the "Company"), a Massachusetts corporation. In 1999, allegations of employer retaliation, coercion and intimidation arose at the Company. Apparently, Singleton, an employee, recommended to Brooks, the Company's operations manager, that a minority candidate ("Hubbard") be employed to fill a vacancy. Singleton and Brooks allege that, after Hubbard was hired, the Debtor instructed that Hubbard's employment be terminated and, in so doing, made derogatory and/or discriminatory statements about Hubbard on the basis of Hubbard's race. Singleton and Brooks were also terminated shortly thereafter. Singleton alleges that the reason for his termination "was because [he] was named as a witness in a civil rights charge" filed by Hubbard. Brooks also alleges that he was terminated because he

was a witness in connection with Hubbard's claim, and because he refused the Debtor's requests that he lie under oath about the incident.

Singleton and Brooks filed complaints with the Massachusetts Commission Against Discrimination (the "MCAD") and it commenced an investigation. Ultimately, in June of 2000, the MCAD Issued Probable Cause Findings against the Company. Significantly, however, the complaints filed by Singleton and Brooks and the Probable Cause Findings of the MCAD were issued against the Company—not against the Debtor directly, though the Debtor was individually named in the body of the complaint. Though the parties disagree as to why, it is undisputed that the MCAD took no further action following the issuance of the two Probable Cause Findings.

The Debtor filed a Chapter 7 bankruptcy petition on July 13, 1999. The case proceeded quickly, seemingly without controversy. Both Singleton and Brooks were sent notice of the bankruptcy and notice of the deadline to object to discharge. They took no action. The Debtor received his bankruptcy discharge on January 4, 2000 and the case was closed on February 17, 2000.

In 2002, however, Attorney Mech filed two separate actions in the Hampden Superior Court ("Superior Court") on behalf of Singleton and Brooks (individually, the "Singleton Action" and the "Brooks Action;" collectively the "Superior Court Actions") against the Company, the Debtor and the Debtor's wife ("Eugenie Barry"). In each, he requested and received attachments on behalf of the plaintiff against property of the Debtor in the amount of $60,000.00. Shortly after receiving the complaints in the Superior Court Actions, the Debtor filed a suggestion of bankruptcy in each case. Attorney Mech failed to

substantively react to that new information.

In further response to the Superior Court Actions, the Debtor consulted his original bankruptcy counsel, Attorney James Mitchell ("Attorney Mitchell"), who, the Debtor claims, sent correspondence to Attorney Mech notifying him of the bankruptcy discharge and advising Attorney Mech that he could not proceed with the Superior Court Actions. The Debtor also consulted Attorney Frank Caruso ("Attorney Caruso"), who, the Debtor claims, also sent correspondence to Attorney Mech notifying him of the bankruptcy discharge and advising Attorney Mech that he could not proceed with the Superior Court Actions. The Debtor says that he also personally told Attorney Mech that he had been discharged and that Mech could not proceed with the Superior Court Actions. Finally, the Debtor went to the Chapter 7 trustee of his bankruptcy estate, who, in the Debtor's presence, called Attorney Mech's office and notified someone in that office of the bankruptcy discharge and that Attorney Mech could not proceed with the Superior Court Actions.

Notwithstanding all of the Debtor's foregoing efforts, Attorney Mech failed to dismiss the Superior Court Actions. Finally, in early February, 2004, the Debtor decided to retain the services of Attorney L. Jed Berliner, whose practice concentrates in bankruptcy law. Attorney Berliner first wrote directly to Attorney Mech. That letter requested that Attorney Mech terminate the litigation by February 9, 2004 and warned that Attorney Mech might be exposing himself to personal liability by fail-

ing to do so. Attorney Mech failed to respond. With trial in the Singleton matter now close at hand, Attorney Berliner contacted and retained Attorney Donald W. Frank ("Attorney Frank") to represent the Debtor in the state court proceedings. Attorney Frank proceeded to review files, meet with the Debtor, contact witnesses, hold conversations with Eugenie Barry's defense counsel and Attorney Mech, and file an appearance, answer and pre-trial conference report with the Superior Court—all for the purpose of developing a defense to the Singleton claim.

The Debtor, through Attorney Berliner, filed the instant Motion for Sanctions on February 26, 2004 approximately two (2) years after the filing of the Superior Court Actions.[1] Attorney Frank testified that, after the Instant Motion for Sanctions was filed, Attorney Mech agreed to dismiss that Superior Court matter only if the Motion for Sanctions was withdrawn. Ultimately, but not until late in 2004 was the last of the Superior Court Actions dismissed.[2]

Attorney Mech has answered and contested the Motion for Sanctions, participating in a full trial thereon. As for respondents Brooks and Singleton, they have not answered or appeared in this matter. Copies of the Motion for Sanctions were mailed by Attorney Berliner (on behalf of the Debtor) to both Singleton and Brooks at their last known addresses, but both copies were returned as "undeliverable." Attorney Mech testified that he has been unable to contact either Singleton or Brooks.

---

1. The Debtor also filed a Motion to Reopen Chapter 7 Case for the purpose of bringing the instant Motion for Sanctions. That motion was granted.

2. In the Singleton Action, a judgment of dismissal was issued on June 17, 2004 due to the plaintiff's failure to pay an annual civil litigation fee. The parties agreed, and represented in open court on November 30, 2004, that the Brooks Action was to be dismissed within seven days.

## II. DISCUSSION

### A. The Status of Respondents Singleton and Brooks

As a preliminary matter, the Debtor asks this Court to default respondents Singleton and Brooks. This Court must, therefore, assess their status in this matter. The Motion for Sanctions is a contested matter under the Federal Rules of Bankruptcy Procedure. Rule 9014 provides, in relevant part:

(b) Service. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F.R. Civ. P.

■ Under Rule 7004, service can be made in any of three ways: (1) personal service pursuant to the Federal Rules of Civil Procedure; (2) personal service pursuant to Massachusetts Rules of Civil Procedure; or (3) first-class mail, pursuant to the Federal Rules of Bankruptcy Procedure. Since it is undisputed that service of the Motion for Sanctions was attempted only by mail, and not by personal service, this Court must examine the sufficiency of service pursuant to the Federal Rules of Bankruptcy Procedure.

Rule 7004(b) provides, in relevant part: Except as provided in subdivision (h) [pertaining to insured depository institutions], in addition to the methods of service authorized by Rule 4(e)-(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

. . .

(8) Upon any defendant, it is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.

■ Courts have interpreted 7004(b)(1)'s requirement of service at the individual's "dwelling house or usual place of abode" strictly: "The use of the abbreviated procedure of service by mail in bankruptcy proceedings requires a higher standard of care when serving a party defendant." *McElhaney v. Student Loan Services (In re McElhaney)*, 142 B.R. 311 (Bankr.E.D.Ark.1992). Thus, a moving party in a contested matter "must comply strictly with Rule 7004, which requires that service by mail be made using the correct address for the party defendant." *Green v. Sheppard (In re Sheppard)*, 173 B.R. 799, 805 (Bankr.N.D.Ga.1994). Mailing to a respondent's "last known address" is not sufficient to effect service under this rule if the respondent is not living at that address at the time service is attempted. The service must be made upon the defendant's "dwelling house or usual place of abode," as determined at the time of service.[3]

---

**3.** As explained by the court in *DuVoisin v. Arrington (In re Southern Industrial Banking Corp.)*, 205 B.R. 525, 533 (E.D.Tenn.1996), aff'd 112 F.3d 248 (6th Cir.1997):

Bankr.R. 7005, which concerns service of pleadings and other papers other than process, incorporates Fed.R.Civ.P. 5, which, in Rule 5(b), permits service on an attorney or

■ Nor may the Debtor rely on service to Attorney Mech to effectuate service on Singleton and Brooks. There is no evidence of an express grant of authority from Brooks or Singleton for Attorney Mech to accept pleadings on their behalf with regard to the Debtor's bankruptcy case. Any such authority would, therefore, have to arise by implication. Although Attorney Mech initially filed an answer to the Motion for Sanctions, purportedly on behalf of Singleton and Brooks, he later testified that he was not acting on their behalf and that he was unable to notify them of the pending Motion for Sanctions.[4] And his prepetition representation of Singleton and Brooks in the underlying Superior Court Actions was not, by itself, sufficient to create implied authority for Attorney Mech to act for them in this case (particularly where they might have had conflicting interests). *See, e.g., Citicorp Mortgage, Inc. v. Brooks (In re Ex–Cel Concrete Co.)*, 178 B.R. 198, 203–04 (9th Cir. BAP 1995); *In re Rae*, 286 B.R. 675, 677 (Bankr.N.D.Ind.2002); *Nisselson v. Roussopoulos (In re Roussopoulos)*, 198 B.R. 33, 39–40 (Bankr. E.D.N.Y.1996). Although mailing motions and notices to attorneys or to last known addresses may be sufficient notice in some instances, initial service of adversary proceedings and other contested matters requires more rigor to satisfy due process concerns.[5] Here, given that the Debtor

---

unrepresented party "by mailing it to the attorney or party at the attorney's or party's last known address." The scope of Rule 5 as applied to pleadings is expressly limited in Rule 5(a) to "every pleading subsequent to the original complaint." (Emphasis added.) Bankr.R. 7004(b)(1) concerning service of process refers not to the defendant's last known address, but to his or her "dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession."

Considering the due process ramifications of any rule governing service of process, the court cannot consider this distinction drawn by the drafters of these rules insignificant. The bankruptcy rule is drawn with specific language not found in Rule 5, to increase the likelihood that a defendant will actually be found by mail addressed to him or her and will receive actual notice that a civil action has been commenced against him or her. Once a civil action has been commenced and process served, a defendant is on notice of the need to protect his or her own interests and to defend himself or herself in the pending litigation. In light of this fact, Rule 5 allows much greater laxity with respect to service of pleadings and other papers on persons who have already been served with process.

4. This Court finds Attorney Mech's reflexive filing of responses for Brooks and Singleton, notwithstanding his failure to reach his clients to obtain their assent to his representation, understandable under the circumstances, where he was personally aware of the underlying issues. Nevertheless, such a practice should be discouraged. First, it was simply inappropriate to represent them here without their assent. Second, by doing so, Attorney Mech exposed them to the risk that he would file the responses and then be unable to locate them, leading to their default.

5. It is important to distinguish between notice and service of process with regard to bankruptcy matters, as the court in *In re Association of Volleyball Professionals*, 256 B.R. 313, 319–20 (Bankr.C.D.Cal.2000) explained:

Notice in bankruptcy cases is different from service of process. Confusion between the two is compounded because both can sometimes be accomplished in the same manner.... Many actions may occur in a bankruptcy case that may affect all creditors generally, but none specifically. Such matters include notice of filing of a bankruptcy case, notice of bar dates to file proofs of claim, notice of hearings on approval of disclosure statements, notice of proposed use, sale or lease of property, notice of approval of compromises or settlements, and notice of deadlines for filing objections to chapter 11, 12 and 13 plans.... These matters require notice to creditors, which is generally governed by Rule 2002.

Notices under Rule 2002 are mailed to creditors at the address designated by the

has done no more than mail the Motion for Sanctions to the last known addresses of Singleton and Brooks and they were returned as undeliverable, it is unclear whether Singleton and Brooks have received actual notice and an opportunity to present any defense. It would violate due process to enter orders granting the Motion for Sanctions as to Singleton and Brooks. *Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Accordingly, the Debtor's request for an order of default against Singleton and Brooks must be denied.

## B. The Discharge Injunction

Attorney Mech claims to have had multiple bases for his belief that his actions were not in violation of the Debtor's discharge. First, he asserts that inclusion of the Debtor as defendant in the Superior Court Actions was necessary in order to establish that the Company had fraudulently transferred property to a new entity named Barry Relocation Services. He claims not to have been in pursuit of any property held by the Debtor. Second, Attorney Mech asserts that no violation of the discharge injunction occurred because the nature of Singleton and Brocks' claims rendered them non-dischargeable.

Attorney Mech's first assertion fails to absolve him from his violation of the discharge—because it is factually untrue. Attorney Mech named the Debtor individ-

ually in the Superior Court Actions and sought money damages. He even sought and received pre-judgment attachments totaling $120,000.00 against the Debtor personally.

Attorney Mech's second argument also fails to persuade. The nature of the claims asserted by Singleton and Brooks sound in 11 U.S.C. §§ 523(a)(6) and 727(a)(2)(A)(willful and malicious injury and/or concealment of assets). The deadline for filing an objection to dischargeability or discharge under those sections passed without objection by Singleton or Brooks; and a finding in their favor by this Court was a necessary pre-condition to filing the Superior Court Actions.

Nor did the nature of the claims, alleging racial discrimination, permit Attorney Mech to proceed notwithstanding the issuance of the bankruptcy discharge. Attorney Mech testified that he relied for authority on the case of *In re Mohawk Greenfield Motel Corporation,* decided by this very Court. 239 B.R. 1 (Bankr. D.Mass.1999). In *Mohawk Greenfield,* a Chapter 11 debtor had been the subject of MCAD hearings conducted prepetition. When the MCAD issued, postpetition, a decision granting the employee-claimants monetary damages, the debtor sought sanctions for violation of the automatic stay under 11 U.S.C. § 362(a). But this Court ruled the automatic stay inapplicable for the reason that the MCAD is a "governmental unit enforcing police and regulatory powers within the meaning of

creditor in a request filed with the court or, if no request has been filed, to the address shown on the list of creditors or the schedules, whichever is filed later. In an asset case, the appropriate address is the address stated in the proof of claim. See Rule 2002(g). The notice requirements in bankruptcy are designed to satisfy the due process requirement of adequate notice to parties whose interests may be affected in such

proceedings. See generally *[In re] Boykin,* 246 B.R. [825] at 828–29 [(Bankr.E.D.Va. 2000)].

In contrast, when a bankruptcy proceeding . . . directly affects the individual rights of a specific party, the initiating motion or objection must be served on the affected party in the same manner as a summons and complaint are served pursuant to Rule 7004. *Boykin,* 246 B.R. at 829.

[the exception to the automatic stay provided by] § 362(b)(4)."[6] *Id.* at 7. This Court further found that, because back pay awards are "a necessary methodology to serve the public purpose envisioned" by the statute underlying the MCAD, § 362(b)(4) excepted from the automatic stay even the entry of monetary judgments by the MCAD. *Id.* at 8–9.

The contexts, however, are completely different—*Mohawk Greenfield* involved an award of damages assessed directly by the MCAD; here, the claimants (through Attorney Mech) pursued their claims as private parties in the state court. The *Mohawk Greenfield* decision was directly and clearly based upon § 362(b)(4)—the exception to the automatic stay provided to *governmental units*. The holding of *Mohawk Greenfield* cannot and does not extend to private parties.

 A bankruptcy discharge acts as a permanent injunction against the holders of dischargeable claims against the Debtor. 11 U.S.C. § 524(a);[7] *Bessette v. Avco Financial Services, Inc.*, 230 F.3d 439 (1st

Cir.2000). When that injunction is violated, the Debtor may seek relief from the bankruptcy court pursuant to 11 U.S.C. § 105(a).[8] Here, Attorney Mech pursued the Superior Court Actions based upon claims that had been discharged in the Debtor's bankruptcy case. That Attorney Mech has violated the discharge injunction is beyond reasonable dispute.

### C. Damages

 The discharge injunction is a critical element of the bankruptcy process. When violated, a debtor is entitled to recover his actual damages caused by the violation. *See, e.g., In re Curtis*, 322 B.R. 470, n. 17 (Bankr.D.Mass.2005) (stating that while 11 U.S.C. § 524 does not provide a remedy for debtors or former debtors who have suffered a violation of the discharge injunction, bankruptcy courts may employ their powers pursuant to 11 U.S.C. § 105 to enforce a discharge injunction and order damages) (citing to *Bessette v. Avco Financial Services Inc.*, 230 F.3d

---

6. 11 U.S.C. § 362(b)(4):
 The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
 . . .
 (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the *commencement of continuation of an action or proceeding by a governmental unit* or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical weapons and on Their Destruction, opened for signature on January 13, 1993, *to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organizations police or regulatory power.*
 (Emphasis added).

7. 11 U.S.C. § 524(a) provides in relevant part:
 (a) A discharge in a case under this title—
 . . . . .
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

8. 11 U.S.C. § 105(a) provides that:
 The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provision this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

at 445; *In re A & J Auto Sales, Inc.*, 223 B.R. 839 (D.N.H.1998); *In re Perrin*, 233 B.R. 71 (Bankr.D.N.J.1999); *In re Borowski*, 216 B.R. 922 (Bankr.E.D.Mich.1998); *In re Hutchins*, 216 B.R. 1 (Bankr. E.D.Ark.1997); *In re Thomas*, 184 B.R. 237 (Bankr.M.D.N.C.1995); *New Milford Sav. Bank v. Jajer*, 52 Conn.App. 69, 726 A.2d 604 (1999). Where appropriate, punitive damages may also be awarded in the discretion of the court. *In re Curtis*, 322 B.R. at 485–86 (citing to *Clayton v. King (In re Clayton)*, 235 B.R. 801, 811 (Bankr. M.D.N.C.1998)); *In re Hendry*, 214 B.R. 473 (Bankr.E.D.Va.1997)).

### 1. *Compensatory Damages*

The Debtor claims that he suffered substantial actual damages. He asserts that the Superior Court Actions caused him great stress, leading to sleeping difficulties. He contends that he came to believe that the attachments obtained by Singleton and Brooks placed his wife's home in jeopardy and that they would impact his future ability to purchase (or refinance) real estate. He says that his wife became particularly upset by the renewed controversy, leading to a change in her affection for him and in their physical intimacy. The Debtor also says that increased stress levels led to his development of diverticulitis, an intestinal condition. And the Debtor also claims to have incurred substantial legal fees.

 The Debtor spent much time at trial attempting to prove that Attorney Mech had notice of the discharge and had notice of the Debtor's (correct) assertion that Attorney Mech was barred from proceeding in the Superior Court. He was successful. But in the process, he proved something else as well—that he was aware of the protection of the discharge injunction and his ability to seek relief from the Bankruptcy Court. Indeed, this Court is

truly mystified why the Debtor waited nearly two years to seek that relief. The Debtor is not entitled to claim damages that resulted from his own delay. Therefore, this Court must examine each of the Debtor's claims to determine not only what damages reasonably flowed from the violation of the discharge injunction, but also which could have been avoided had the Debtor timely brought this matter before this Court.

The Debtor's claimed actual damages may be placed into two categories: the Debtor's personal injuries and his attorneys' fees.

### a. *Personal Injuries*

 It is the Debtor's burden to prove his actual damages. *In re Rosa*, 313 B.R. 1, 7 (Bankr.D.Mass.2004) (citing to *In re Steenstra*, 280 B.R. 560, 569 (Bankr. D.Mass.2002); *In re Still*, 117 B.R. 251, 254 (Bankr.E.D.Tex.1990)). The Debtor claims that the Superior Court Actions caused him such stress that he developed a medical condition called diverticulitis; that he lost sleep; and that his spouse lost affection for him with a resulting reduction in their physical intimacy. But, at trial, the Debtor provided no support or proof of the cause of his asserted diverticulitis. No medical professional testified; no medical report was introduced. This Court has no basis upon which to conclude that this medical condition was caused by the filing of the Superior Court Actions. *See In re Rosa*, 313 B.R. at 7–8. Nor is this Court prepared to find and rule that a reduction of a non-debtor spouse's affection for a debtor is a foreseeable and natural consequence of a violation of the discharge injunction under § 524(a).

Nonetheless, the Debtor is entitled to an award of damages for his stress, including loss of sleep, caused by the initial filing of the Superior Court Actions. *See Fleet*

*Mortgage Group v. Kaneb*, 196 F.3d 265, 269 (1st Cir.1999). The Superior Court Action were filed on March 8, 2002. The Debtor testified that he Immediately contacted Attorneys Mitchell and Caruso, who assured him that the suits could not go forward and that they would take remedial action. Yet Attorney Mech failed to respond as predicted, and the continuing stress from what should have been cleared up expeditiously adds to what was undoubtedly an extremely difficult period for the Debtor. Under these circumstances, after hearing from the Debtor and evaluating his testimony, the Court awards the Debtor the amount of $5,000.00 for his emotional distress caused by Attorney Mech's violation of the discharge injunction.

b. *Legal Fees*

▇ The Debtor also claims a total amount of $31,147.00 in attorneys' fees: $2,500.00 for Attorney Caruso's services; $25,647.00 for Attorney Berliner's services; and $3,000.00 for Attorney Frank's services. The Debtor is entitled to include attorneys' fees amongst his actual damages, provided that they are reasonable. *In re Rosa*, 313 B.R. at 8 (citing to *In re Weisberg*, 218 B.R. 740, 750 (Bankr. E.D.Pa.1998); *In re Robinson*, 228 B.R. 75, 80 (Bankr.E.D.N.Y.1998)).

▇ First, the Debtor seeks payment of $2,500.00 for the services of Attorney Caruso. But Attorney Caruso's billing submitted into evidence was neither detailed nor itemized. And the missing information can no longer be obtained firsthand. Attorney Caruso has, regrettably,

passed away. The Debtor testified that Attorney Caruso spent significant time on this matter, and that he believes the bill is a continuing obligation. This Court agrees, but, without more, it is difficult to assess the reasonableness of the fees. It is undisputed that Attorney Caruso was aware of the bankruptcy discharge, and, though reportedly not very familiar with this area of the law, he knew that the bankruptcy discharge likely precluded the Superior Court Actions because, according to the Debtor, he so advised Attorney Mech. But for two years, Attorney Caruso proceeded without seeking relief from the bankruptcy court or consulting with more experienced bankruptcy counsel. Under the circumstances, the Court will award to the Debtor, on account of Attorney Caruso's fees, the amount of $1,250.00, as reasonable under the best information now available.

The Debtor also seeks payment for Attorney Berliner's fees and expenses in the amount of $25,647.00.[9] Here, too, the Court has concerns. First, the fees initially requested reflected an hourly rate ($350.00 per hour), considerably higher than Attorney Berliner's norm ($220.00 per hour). Attorney Berliner believed that premium justified, but when the Court expressed an inclination not to award compensation to Attorney Berliner at that rate, he reconsidered, agreeing to reduce the rate to $220.00 per hour. That reduction totals $9,100.00. Second, the fees should be reduced by the sum of $500.00 already paid to Attorney Berliner by Attorney Mech.[10] Those reductions

---

9. This amount includes $1,080.00 in fees for Attorney David J. Noonan, who "filled in" for Attorney Berliner immediately following the death of his mother.

10. On November 15, 2004, Attorney Mach was sanctioned in the amount of $500.00 for

his failure to go forward with the hearing scheduled for that day. The funds were to be paid to the Debtor's counsel, Attorney Berliner, to cover his costs of attendance. Because the $500.00 was received after the Fee Application was filed, the payment was not reflected in the Fee Application.

bring the fees and expenses down to $16,047.00.

There is a further problem. This Court has additional concerns about the decision made by Attorney Berliner to retain Attorney Frank on the Debtor's behalf. Attorney Berliner had a duty to maintain a reasonable and efficient course on his client's behalf. Yet Attorney Berliner's decision to hire Attorney Frank to represent the Debtor in the State Court Actions, instead of first seeking emergency relief from this Court, appears, even without the benefit of hindsight, particularly unwise. If successful in his quest for emergency relief in this Court, Attorney Berliner could have obviated Attorney Frank's services altogether. Attorney Mech should not have to pay for attorney fees incurred unnecessarily.

The matter of Attorney Frank's fees, therefore, presents somewhat of a dilemma. Disallowing his fees as unnecessary would create quite an unfair result for Attorney Frank. At the behest of Attorney Berliner, Attorney Frank took on a case in good faith, and on very short notice. He performed all of the duties that he reasonably believed were necessary to protect his client, the Debtor. Attorney Frank does not practice bankruptcy law. And, knowing that the Debtor had competent bankruptcy counsel, with whom he was in communication, Attorney Frank reasonably relied upon that bankruptcy counsel to raise and handle bankruptcy issues, such as the discharge injunction. Therefore, as ever with the goal of equity in mind, this Court includes, amongst the compensatory damages for which Attorney Mech is responsible, Attorney Frank's requested fees of $3,000.00, but reduces the amount of Attorney Berliner's fees by the same amount.

In total, this Court awards the Debtor compensatory damages in the reduced amount of $22,297.00: $5,000.00 for the Debtor's emotional distress; $1,250.00 for Attorney Caruso's services; $13,047.00 for Attorney Berliner's services; and $3,000.00 for Attorney Frank's services.

### 2. *Punitive Damages*

■ The Debtor wants more than compensatory damages. He reminds this Court that it has the power to include "a specific remedy . . . to address these unique circumstances." And, in addition to monetary damages, the Debtor has two remedies in mind. First, the Debtor requests the Court to order the release of the homestead exemption recently recorded by Attorney Mech on his residence. Second, the Debtor asks this Court to declare that any sanctions awarded to the Debtor be deemed to be the result of a willful and malicious injury committed on the Debtor by Attorney Mech and therefore non-dischargeable in any future bankruptcy case which Attorney Mech might file. This Court finds those suggestions both drastic and inappropriate. Though Attorney Mech's belief that the he was not violating the discharge injunction was ill-founded, and perhaps even foolish, he testified credibly that he did not believe that his actions violated the discharge injunction. While Attorney Mech is responsible for the consequences of his actions, this Court does not believe that, despite all of the warnings, he ever understood (until it was too late) that his actions were not protected by law. Under those circumstances, this Court holds that no punitive damages are justified.

### III. *CONCLUSION*

For all the foregoing reasons, the Motion for Sanctions will be granted as to Attorney Mech only; and the Court will award the Debtor compensatory damages

against Attorney Mech in the sum of $22,297.00.